## In re WINSLOW COMMUNICATIONS, INC.

## In re Louis McCray.

## Estate of Johnny B. Atkins, et al., Plaintiffs/Counter–Defendants,

### v.

## AMW Cable Company, Inc., et al., Defendants/Counter–Plaintiffs.

Bankruptcy Nos. 99–25558, 94–12335. Adversary No. 00–1029.

United States Bankruptcy Court, N.D. Mississippi.

Oct. 13, 2000.

James W. O'Mara, Jackson, MS, Michael W. Boyd, Robert E. Buck, Greenville, MS, for debtor.

Charles Victor McTeer, McTeer & Associates, Greenville, MS, for trustee.

John H. Cox, III, Willie Griffin, Vernita King Johnson, Greenville, MS, for plaintiffs.

Paul Mathis, Jr., Greenville, MS, Douglas C. Noble, Jeffrey K. Tyree, Jackson, MS, for defendants.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for summary judgment filed by the defendants, Winslow Communications, Inc., Robert D. Gross, Judith Ann Carroll Gross, AMW Cable Company, Inc., and AMW Cablevision, L.P.; response to said motion having been filed by the plaintiffs, Estate of Johnny B. Atkins, deceased; Louis McCray; Rachel King, guardian of Meriel and Ariel Atkins, Benjamin Thompson, Robin Caldwell, and Timothy Young; Leroy Wright; and Wayne R. Wright; and the court, having considered same, hereby finds as follows, to-wit:

## I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. Since Winslow Communications, Inc., is now involved in this adversary proceeding, the predominant issues would be considered "core" causes of action as that term is defined in 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O). Although certain parts of the proceeding might be defined as "non-core," the parties have agreed that this court may enter final dispositive orders as contemplated by 28 U.S.C. § 157(c)(2).

## II.

### FACTUAL BACKGROUND

The following factual background was extracted, in part, from a version of a final pre-trial order submitted to the court by the plaintiffs. Although the defendants did not execute this version of the pre-trial order, the court is of the opinion that this factual representation will reasonably describe the history of the proceeding.

1. AMW Cable Company, Inc., (AMW), was incorporated under the laws of the State of Mississippi on September 1, 1987.

2. The initial shareholders of AMW were Johnny Atkins, Wayne Wright and Louis McCray. Each were issued 1,000 shares of stock.

3. On August 11, 1989, Robert D. Gross (Gross) purchased 2,067 shares of common stock in AMW for a total purchase price of $130,000. The shareholders of AMW executed a Shareholders' Agreement and Stock Purchase Agreement.

4. On December 7, 1989, the shareholders of AMW formed a partnership, AMW Cablevision, L.P., (AMW Cablevision), a Colorado limited partnership.

5. On December 15, 1989, AMW and AMW Cablevision entered into a revolving credit and term loan agreement with First Interstate Bank of Denver, N.A., (FIBD), in the amount of $1,000,000. On that same date, a security agreement was executed whereby AMW and AMW Cablevision pledged all of their assets to secure said loan. (Although it may be insignificant, at this time, the court can not differentiate the assets owned by AMW from those owned by AMW Cablevision.)

6. The execution of the FIBD note and security agreements by AMW and AMW Cablevision was approved by all of the shareholders of record and the members of AMW's board of directors pursuant to a corporate authorization dated December 13, 1989.

7. According to an amendment to the Shareholders' Agreement, effective January 1, 1990, the shareholders owned the following shares:

Johnny B. Atkins 1,000 shares
Wayne Wright 1,000 shares
Leroy Wright 529 shares
Louis McCray 1,000 shares
Robert D. Gross 2,353 shares

8. On December 27, 1990, Johnny Atkins was killed in an automobile accident.

9. On December 28, 1990, following the death of Atkins, the remaining officers of AMW resigned. The AMW board then elected McCray as President and Gross as Vice President. Bank account signature cards were revised to reflect the change in circumstances. McCray served as Secretary for this particular board meeting, but this position was later filled by the election of Brenda Bell.

10. An AMW Loan Modification Agreement with FIBD, which was closed on May 6, 1992, was necessitated by AMW's default on the original December 15, 1989 loan. The Loan Modification Agreement, which was negotiated by Gross, provided for a reduced interest rate and substituted two (2) promissory notes in place of the original note.

11. Because AMW was insolvent, it filed, on January 20, 1993, a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado. Gross signed the petition on behalf of AMW.

12. FIBD filed its proof of claim in the bankruptcy case as secured by real estate, personal property, and general intangibles in the total amount of $1,143,672.90.

13. On August 31, 1993, Gross, Judith Ann Carroll Gross, (Mrs. Gross), and Winslow Communications, Inc., (Winslow), purchased the FIBD secured claim, which had been classified in AMW's plan of reorganization as the Class 4 claim, for $525,000. As of June 28, 1994, this amount remained outstanding and unpaid.

14. AMW filed with the Colorado Bankruptcy Court a second amended disclosure statement on January 4, 1994. This disclosure statement, which was approved by the court, reflected the assignment of the FIBD claim to Gross, Mrs. Gross, and Winslow. This disclosure statement also reflected that all of AMW's assets *would be conveyed* to Winslow in lieu of foreclosure. These provisions were included in the order confirming AMW's Chapter 11 plan which was entered on February 22, 1994.

15. According to AMW's plan of reorganization and second amended disclosure statement, the shareholders and their percentages of ownership in AMW were as follows:

Robert Gross 49%
Louis McCray 14.4%
Estate of Johnny Atkins 14.4%

Wayne Wright 14.4%

Leroy Wright 7.6%

16. On June 28, 1994, a special meeting of the board of directors of AMW and its shareholders was held in Metcalfe, Mississippi. The board members present were McCray, Gross, and Brenda Bell. The shareholders present were McCray, Gross, Wayne Wright, and Vernita King Johnson, the attorney for Benjamin Thompson, Timothy Young, and Robin Caldwell, who were heirs of Johnny Atkins.

17. At the aforementioned meeting, it was moved by McCray, and seconded by Bell, that AMW transfer its assets in lieu of foreclosure to Winslow. The shareholders voting in favor of the action were: McCray, Wayne R. Wright and Gross, comprising not less than seventy-four percent (74%) of the issued and outstanding shares of voting stock of AMW. (Parenthetically, the court notes that this corporate action occurred several months *after* AMW's plan of reorganization had been confirmed.)

18. The documentation, effectuating the transfer of AMW's assets to Winslow, which ostensibly occurred on June 28, 1994, was attached to the defendants' motion for summary judgment as collective Exhibit "9."

## III.

### ISSUES IN DISPUTE

When all of the allegations in this proceeding are thoroughly analyzed, there appear to be only three primary issues in actual dispute. They are identified as follows:

1. Whether AMW's bankruptcy case, filed in the District of Colorado, was legally authorized by the appropriate officers, directors, and/or shareholders of the corporation.

2. Whether the transfer of the assets of AMW in lieu of foreclosure to Winslow was legally authorized and in keeping with the requirements of due process.

3. Whether the plaintiffs' remedies should be exercised in the Bankruptcy Court for the District of Colorado pursuant to Rule 60(b), Federal Rules of Civil Procedure.

Each of these issues will be discussed hereinbelow.

## IV.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.,* 812 F.2d 265 (5th Cir.1987); *Putman v. Insurance Co. of North America,* 673 F.Supp. 171 (N.D.Miss.1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.,* 828 F.2d 291 (5th Cir.1987), *Putman v. Insurance Co. of North America,* 673 F.Supp. 171 (N.D.Miss.1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phil-*

*lips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

## V.

■ *Issue 1:* Whether AMW's bankruptcy case, filed in the District of Colorado, was legally authorized by the appropriate officers, directors, and/or shareholders of the corporation.

The defendants have attached to their motion for summary judgment several exhibits which reflect corporate activities of AMW. While these documents appear to be self-explanatory and legitimate "on their face," the plaintiffs have challenged that their preparation and execution were not appropriately authorized. There is even an allegation of forgery concerning one of the signatories. Because of the conflicting positions taken by the parties, the court is of the opinion that there are material factual disputes outstanding as to this issue. As such, the court must require testimony to establish the authenticity of these corporate documents, as well as, an appropriate foundation to justify their preparation and execution.

■ *Issue No. 2:* Whether the transfer of the assets of AMW in lieu of foreclosure to Winslow Communications, Inc., was legally authorized and in keeping with the requirements of due process.

Without dispute, AMW was, at one point in time, indebted to FIBD in the sum of $1,143,672.93, which was secured by all of the assets owned by AMW and AMW Cablevision. It is equally undisputed that the Colorado Bankruptcy Court authorized the transfer of these assets to Winslow in lieu of foreclosure as a part of the confirmation of AMW's plan of reorganization. By this time, Mr. and Mrs. Gross and Winslow had acquired FIBD's claim against AMW and AMW Cablevision.

While the Colorado Bankruptcy Court apparently "blessed" these events, the plaintiffs have challenged the efficacy of the transaction, asserting that they were not properly noticed of the events occurring in the AMW bankruptcy case, as well as, that they were deceived as a result of misrepresentations made by Mr. Gross. From the factual recitation it is obvious that the proceedings in the bankruptcy court occurred before any purported ratification and/or authorization by the AMW directors and shareholders. Although this scenario may have a logical rationale, the court is convinced that sworn testimony is necessary to explain this chronology.

While there is nothing inherently wrong with purchasing a claim in a bankruptcy case, there is certainly a question as to whether Gross, as an officer, director, and shareholder of AMW, could acquire and assign the FIBD claim without recognizing his fiduciary responsibilities to AMW and his fellow shareholders. There is no doubt that there was a secured debt owed by AMW which was reduced, after its acquisition from FIBD, to the sum of $525,000. The continued existence of this debt and its potential treatment in AMW's plan of reorganization, considering the underlying value of the collateralized assets, must be considered. Additionally, the plaintiffs have asserted that Gross advised them that, as of March 31, 1994, the assets of AMW were $343,751.62 and the combined current and long term liabilities were $1,215,719.74, effecting a net deficit of $871,968.12. Gross had already negotiated the substantial reduction in the FIBD debt when these representations, which could have had significant influence on the corporate actions, were allegedly made.

The court is of the opinion that the conflicting positions advocated by the parties necessitates the presentation of evi-

dence to assist the court in determining whether the requirements of due process were followed by Gross during the administration of AMW's bankruptcy case in Colorado, as well as, to determine whether the alleged representations of Gross were deceptive and misleading.

See *Butler v. CMC Mississippi, Inc.,* 1998 WL 173233 (N.D.Miss.1998), where Judge Davidson offered the following comment:

> This court finds CMC's motion for summary judgment not well-taken and shall deny it. In doing so, this court notes that it has the discretion to deny motions for summary judgment and allow parties to proceed to trial and more fully develop the record for the trier of fact. *Kunin v. Feofanov,* 69 F.3d 59, 61 (5th Cir.1995); *Black v. J.I. Case Co.,* 22 F.3d 568, 572 (5th Cir.1994); *Veillon v. Exploration Servs., Inc.,* 876 F.2d 1197, 1200 (5th Cir.1989).

While the extent of Gross' fiduciary responsibilities to AMW and his fellow shareholders is a disputed legal issue, it must also be addressed by the parties.

*Issue 3:* Whether the plaintiffs' remedies should be exercised in the Bankruptcy Court for the District of Colorado pursuant to Rule 60(b), Federal Rules of Civil Procedure.

Whether the plaintiffs should be required to redress their claims in the bankruptcy court for the District of Colorado must be held in abeyance. Before requiring the plaintiffs to reopen the Colorado bankruptcy case, this court would first like to ascertain whether there was legitimate corporate authorization to file that bankruptcy case from the outset. If this court concludes, once evidence is presented, that the AMW bankruptcy was legally authorized and that the proceedings in the bankruptcy court in the District of Colorado were conducted with appropriate due pro-

cess and notice to the AMW shareholders, the proceeding in this court might well be over. If a contrary result is reached, however, this court can then make a determination as to whether the plaintiffs' claims for relief must be exercised in the Colorado forum or whether they can be concluded here.

For the reasons set forth hereinabove, the court concludes that there are material factual issues in dispute between these parties. As such, the motion for summary judgment filed by the defendants is not well taken and must be overruled.

An order will be entered consistent with this opinion.